1

2

3

4

5   **UNITED STATES DISTRICT COURT**

6   **SOUTHERN DISTRICT OF CALIFORNIA**

7

| | |
|---|---|
| 8  PEOPLE OF THE STATE OF CALIFORNIA EX REL. REGIONAL | CASE NO. 01cv0270 BTM(CAB) |
| 9  WATER QUALITY CONTROL BOARD, SAN DIEGO REGION, | **ORDER GRANTING MOTION TO INTERVENE** |
| 10 | |
| Plaintiff, | |
| 11      vs. | |
| 12 CARLOS MARIN, an individual in his capacity as Acting Commissioner of the | |
| 13 INTERNATIONAL BOUNDARY AND WATER COMMISSION, UNITED | |
| 14 STATES SECTION, et al., | |
| Defendants. | |
| 15 | |
| 16 THE SURFRIDER FOUNDATION, a California nonprofit public benefit | |
| 17 corporation, SAN DIEGO CHAPTER, | |
| 18      Plaintiff, | |
| 19      vs. | |
| 20 CARLOS MARIN, an individual in his capacity as Acting Commissioner of the | |
| 21 INTERNATIONAL BOUNDARY AND WATER COMMISSION, UNITED | |
| 22 STATES SECTION, et al., | |
| 23      Defendants. | |
| 24 | |

25      Bajagua, LLC ("Bajagua") has filed a motion to intervene in this action.  For the

26   reasons discussed below, Bajagua's motion to intervene is **GRANTED** for the limited

27   purpose of requesting an extension of the compliance deadline.

28

# I. <u>PROCEDURAL BACKGROUND</u>

In February 2001, the Regional Water Quality Control Board, San Diego Region ("Regional Board") commenced this suit, alleging that USIBWC was violating the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A) and (B) and California's Porter-Cologne Water Quality Control Act, Water Code §§ 13385 and 13361, by discharging inadequately treated sewage effluent through the South Bay Ocean Outfall from the International Wastewater Treatment Plant ("IWTP").

On December 5, 2003, the Court granted the Regional Board's motion for summary judgment regarding liability of USIBWC under the Clean Water Act and the Porter-Cologne Water Quality Control Act.  The Court found that USIBWC's ongoing discharges from the IWTP violate and will continue to violate effluent limitations based on secondary treatment requirements and limitations for acute and chronic toxicity contained in waste discharge requirements for the IWTP.

On December 6, 2004, the Court issued a final judgment setting a compliance schedule ("Compliance Schedule").  The Compliance Schedule requires that the USIBWC come into compliance with all effluent standards and limitations contained in Order No. 96-50 not later than September 30, 2008.

On February 14, 2006, USIBWC and Bajagua entered into a Development Agreement.  USIBWC granted to Bajagua the exclusive right to pursue the acquisition of permit approvals, financing and other prerequisites to the design, construction, ownership, operation and maintenance of all land, rights of way, facilities and services in Mexico to provide secondary treatment and effluent discharge for up to 25 MGD of advanced primary treated wastewater discharged by the IWTP and 34 MGD of untreated wastewater discharged by sources in the Tijuana, Mexico area.

The Development Agreement provides that the project facilities will be fully operational and in compliance with all applicable effluent standards and limitations by September 30, 2008.  (Agreement, ¶ 3.1(i).) The Agreement requires that Bajagua, at its sole expense, complete a number of "development activities" on or before May 2, 2007, or in some

1   instances on or before September 12, 2006,  including obtaining all rights to obtain real

2   estate and rights-of-way necessary for the facilities, obtaining all necessary permits to

3   commence construction, obtaining necessary approvals from the Mexican Government,

4   awarding the subcontract and other contracts necessary for the construction of the facilities,

5   and securing the financing for construction.  (Agreement, ¶ 3.1(a)-(g).)

6          The actual construction, operation, and maintenance of the proposed secondary

7   treatment facilities are to be governed by a "Fee-for-Services Contract" that the parties will

8   enter upon Bajagua's successful completion of its development obligations. (Agreement, ¶¶

9   4.1, 4.5.)  USIBWC may terminate the Agreement if, by May 2, 2007, USIBWC has not

10  obtained reasonable assurance of appropriations for the Fee-for-Services Contract and for

11  the administration and oversight of the design, construction, operation and maintenance of

12  the Project Facilities.   (Agreement, ¶ 5.3(b).)

13         On April 25, 2007, Bajagua notified USIBWC that it would be unable to meet the May

14  2, 2007 milestones and could not complete construction of the facilities by September 30,

15  2008. (Marin Decl., ¶ 21.)  The USIBWC chose to suspend the Development Agreement

16  pending Court approval of an extension of the compliance deadline.  On July 10, 2007,

17  USIBWC filed its motion to extend the compliance deadline to March 1, 2010.

18

19                            **II.  CONGRESSIONAL ACTION**

20         In February 2007, the President submitted to Congress his FY 2008 budget.  This

21  budget included a request for $66 million to upgrade the IWTP to provide secondary

22  treatment at the existing facility in the United States, in the event that certain milestones set

23  forth in the Development Agreement were not met by May 2, 2007.   In the event that the

24  milestones were met, the budget requested $3.2 million to fund the first month of operations

25  of the proposed Mexican facility.

26         On June 12, 2007, the House Appropriations Committee deleted from the budget both

27  the $66 million for the IWTP expansion and the $3.2 million to fund the operation of the

28  Mexican facility.  On June 28, 2007, the Senate Appropriations Committee recommended

1 "up to $66 million for the construction in the United States of secondary wastewater treatment

2 capability, only after the IBWC determines that negotiations to implement section 804 of

3 Public Law 106-457, as amended, are completed."

4      The Senate Appropriations Committee included in the FY 2008 State and Foreign

5 Operations Appropriations bill language directing the Government Accountability Office to

6 conduct a review of both the proposal to upgrade the existing facility and the proposal to

7 construct a Mexican facility.

8

9 **III.  DISCUSSION**

10      Bajagua seeks to intervene as a matter of right under Fed. R. Civ. P. 24(a).  In the

11 alternative, Bajagua seeks permissive intervention under Fed. R. Civ. P. 24(b).  Bajagua's

12 motion is opposed by the Regional Board and USIBWC.  For the reasons discussed below,

13 the Court finds that Bajagua satisfies the requirements for intervention under both Rule 24(a)

14 and 24(b).

15      Rule 24(a) provides that upon timely application, anyone shall be permitted to

16 intervene in an action "when the applicant claims an interest relating to the property or

17 transaction which is the subject of the action and the applicant is so situated that the

18 disposition of the action may as a practical matter impair or impede the applicant's ability to

19 protect that interest, unless the applicant's interest is adequately represented by existing

20 parties."

21      The Ninth Circuit applies a four-part test under Rule 24(a): (1) the application for

22 intervention must be timely; (2) the applicant must have a "significantly protectable" interest

23 relating to the property or transaction that is the subject of the action; (3) the applicant must

24 be so situated that the disposition of the action may, as a practical matter, impair or impede

25 the applicant's ability to protect that interest; and (4) the applicant's interest must not be

26 adequately represented by the existing parties in the lawsuit. Northwest Forest Resource

27 Council v. Glickman, 82 F.3d 825, 836 (9th Cir. 1996).

28      Bajagua has a protectable interest under the Development Agreement, which grants

1  to Bajagua the exclusive development rights in connection with facilities in Mexico. Bajagua's

2  ability to protect its interest may be impaired if the compliance deadline is not extended.

3       The Court also finds that Bajagua's protectable interest is not adequately represented

4  by USIBWC.  It appears that USIBWC and Bajagua have divergent interests.  Although

5  USIBWC also desires an extension of the compliance deadline, there is a question as to

6  whether USIBWC's arguments regarding the timing and necessity of the extension will be

7  the same as Bajagua's.

8       Finally, the Court finds that the application of intervention is timely in light of changed

9  circumstances that have prompted Bajagua to seek protection of its interest.  Therefore,

10  Bajagua is entitled to intervene as a matter of right on the limited issue of whether the

11  compliance deadline should be extended.  Bajagua does not have leave to intervene for all

12  purposes and should not interpret this order as general permission to advocate its project

13  over any other alternatives.

14       The Court also finds that intervention is appropriate under Fed. R. Civ. P. 24(b)(2).

15  Given the limited issue on which Bajagua is permitted to intervene, the intervention will not

16  delay or prejudice the adjudication of the rights of the original parties.

17

18                          **IV.  CONCLUSION**

19       For the reasons discussed above, Bajagua's motion to intervene is **GRANTED**.  The

20  Court gives Bajagua leave to intervene on the limited issue of whether the compliance

21  deadline should be extended.  Bajagua may file a brief in connection with USIBWC's pending

22  motion to amend the Compliance Order on or before **August 31, 2007**.

23  **IT IS SO ORDERED.**

24

   DATED:  August 21, 2007

25

26                                        Honorable Barry Ted Moskowitz
                                          United States District Judge
27

28